IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLOYD'S SYNDICATE 3624 (HISCOX), <br><br>               Plaintiff,<br><br>    v.<br><br>BETTY J. CLOW, not individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust; FRANKLIN ANDREW CLOW, SR., not individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust; and OAK HILL DEVELOPMENT, LLC,<br><br>               Defendants. | Case No. 19 C 6405 <br><br> Judge Harry D. Leinenweber |

MEMORANDUM OPINION AND ORDER

Plaintiff Lloyd's Syndicate 3624 (Hiscox) moves for Judgment on the Pleadings pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 27.) For the reasons stated herein, the Motion is denied.

I.    BACKGROUND

A.    The Policies

Betty J. Clow and Franklin Andrew Clow, Sr. (collectively "the Clows") are co-trustees of the Julianne E. Clow-Baltz Declaration of Trust ("the Trust"). (Compl. ¶¶ 2-3, Dkt. No. 1.) The Clows purchased a Trustees Professional Liability Policy effective December 8, 2017 through December 8, 2018 ("2017-18 Policy") from Hiscox. (*Id.* ¶ 25; 2017-18 Policy, Dkt. No. 1-4.) The Clows renewed that Trustees Professional Liability Policy for continuing coverage effective December 8, 2018 through December 8, 2019 ("2018-19 Policy"). (*Id.* at ¶ 26; 2018-19

Policy, Dkt. No. 1-5.) The 2017-18 Policy expired at 12:01 a.m. on December 8, 2018. (2017-18 Policy at 1.) Excepting the coverage period, the policies are identical and contain the same insuring agreement, definitions, and notice provisions. (*Compare* 2017-18 Policy, *with* 2018-19 Policy.)

The "Trustees Professional Liability Coverage Part," Section III defines "you, your, or insured" as the "named insured, additional named trustee, or employee." (2017-18 Policy at 8 & 13; 2018-19 Policy at 11 & 16.) Section III defines "[n]amed insured" as "the individual, corporation, partnership, limited liability company, or other entity identified in Item 1 of the Declarations." (2017-18 Policy at 8; 2018-19 Policy at 11.) Item 1 of the Declarations identifies "Betty J. Clow and Franklin Andrew Clow, Sr." as "named insureds." (2017-18 Policy at 1; 2018-19 Policy at 3.)

> The policy further provides:
>
> We will pay up to the coverage part limit for damages and claim expenses in excess of the retention for covered claims against you alleging a negligent act, error, or omission in your trustee services performed on or after the retroactive date, including, but not limited to:
>
> 1. breach of fiduciary duty or duty of loyalty, whether imposed by the trust instrument, statute, or other applicable law;
>
> 2. breach of any duty related to trust assets, whether imposed by the trust instrument, statute, or other applicable law;
>
> 3. breach of discretionary investment authority in violation of the trust instrument;
>
> 4. a petition for removal or suspension of the trustee, whether asserted with or without a demand for an accounting;
>
> 5. negligent delegation; or

6. personal and advertising injury,

provided the claim is first made against you during the policy period and is reported to us in accordance with Section V. Your obligations.

\* \* \*

V. Your obligations

. . .

| | |
|---|---|
| Notifying us of claims | You must give written notice to us of any claim as soon as possible, but in any event, no later than 60 days after the end of the policy period. |
| | All such notifications must be in writing and include a copy of the claim, and must be submitted to us via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Notifying us of potential claims | You have the option of notifying us of potential claims that may lead to a covered claim against you. |
| | . . . |
| | The benefit to you of notifying us of a potential claim is that if an actual claim arises from the same circumstances as the properly notified potential claim, then we will treat that claim as if it had first been made against you on the date you properly notified us of it as a potential claim, even if that claim is first made against you after the policy period has expired. |
| | \* \* \* |
| Claim | means any written assertion |

|  |  |
|---|---|
|  | of liability or any written demand for financial compensation or non-monetary relief. |
| Potential claim | means any acts, errors, or omissions of an insured or other circumstances reasonably likely to lead to a claim covered under this policy. |

\* \* \*

(Answer ¶¶ 28–30, Dkt. No. 14; 2017-18 Policy at 8–9 & 13; 2018-19 Policy at 11–12 & 16.)

### B. The December 3, 2018 Letter

In late July 2017, Nick Stanitz ("Stanitz") signed an agreement to purchase certain property from the Trust. (Underlying Compl. at 11, Compl., Ex. B, Dkt. No. 1-2.) On April 26, 2018, the Clows amended that agreement, changing the purchase price and providing that Stanitz would take title under the name of Oak Hill Development, LLC ("Oak Hill"). (Underlying Compl. at 34.)

On December 3, 2018, Stanitz and Oak Hill's counsel emailed a letter to the Clows' counsel, Paul Mitchell. (*See* 12/3/18 Letter, Compl., Ex. A, Dkt. No. 1-1.) The letter was addressed to the Clows "[a]s Trustees of [the Trust]" "c/o Paul Mitchell, Esq." at "paul@paulmitchellattorney.com." (*Id.*) The letter states, "after purchasing the Property, Mr. Stanitz discovered extensive amounts of petroleum product in the soil throughout a significant portion of the Property." (*Id.*) It continues, "Mr. Stanitz and Oak Hill have spent in excess of $800,000 to remediate that soil." (*Id.*)

The letter explains an improperly installed underground gas tank caused the contamination and alleges that "the Trust failed to disclose the tank's underground existence" before the purchase. (*Id.*) The letter alleges, "that the Trust and its agents" deliberately concealed that information to induce a purchase and misled Stanitz and Oak Hill. (*Id.*) The letter states, "the Trust must pay the costs to remediate the contaminated soil at the Property. We respectfully request that the Trust fully indemnify the Buyers for any and all costs for investigation and remediation." (*Id.*) The letter requests that the Trust advise of its "intention by Friday, December 7" and reserves "the right to take all actions necessary to recover from the Trust, including the filing of legal proceedings." (*Id.*)

Because the email was sent to a dormant email account, Mitchell did not receive the email and attached letter until it was forwarded to his active email inbox on December 7, 2018. (12/7/18 Email, Resp., Ex. C, Dkt. No. 31 ("Please see below and attached, as the original email appears to have not gone through.").) Mitchell does not recall seeing the email on December 7, 2018, December 8, 2018, or December 9, 2018. (Mitchell Decl. ¶¶ 18–20, Resp., Ex. D, Dkt. No. 31.) On December 11, 2018, Mitchell had a pre-scheduled meeting with the Clows where he brought copies of the letter and told the Clows about it for the first time. (*Id.* ¶¶ 23 & 26–28.)

### C. The Underlying Lawsuit

On April 25, 2019, Stanitz and Oak Hill sued the Clows in their capacity as co-trustees of the Trust in Will County, Illinois. (*See* Underlying Compl. at 1.) That complaint relates to the same underground

- 5 -

gas tank contamination issues addressed in the December 3, 2018 letter. (*See* Answer ¶ 20.) The Complaint alleges causes of action against the Clows for breach of contract, fraud in the inducement, and fraudulent concealment. Each cause of action alleges that the Clows were aware of the leaking underground gas tank that contaminated the property's soil. (*See generally* Underlying Compl.) The Complaint requests a judgment in excess of $750,270.73 against the Clows as co-trustees of the Trust (*Id.* at 6 & 8–9.)

On July 16, 2019, the Clows provided notice of the lawsuit involving Stanitz and Oak Hill to Hiscox. (Compl. ¶ 23.) The General Liability Notice of Occurrence/Claim Form submitted to Hiscox stated that the "Description of Occurrence" is "Claimant alleges the insured did not provide all of the appropriate information during the sale of a property." (Notice Form, Compl., Ex. C, Dkt. No. 1-3.) Hiscox responded with a reservation of rights and later filed this declaratory judgment action. Hiscox alleges that: (1) the Clows are not covered under the 2017-18 Policy because the December 3, 2018 letter was a claim made during the policy period, but the Clows failed to report it within the requisite time period; and (2) the Clows are not covered under the 2018-19 Policy because the claim was not made during that policy period.

Hiscox now moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 27.) Hiscox asks the Court to enter judgment finding: (1) No coverage is available under the 2017-18 Policy for the Clows; (2) No coverage is available under the 2018-19 Policy for the Clows; (3) Hiscox has no duty to defend the Clows in the Underlying Lawsuit; and (4) Hiscox has no duty to indemnify the Clows in the

Underlying Lawsuit. In response, the Clows ask the Court to deny Hiscox's Motion and find that the December 3, 2018 letter was not a "claim" as defined by the 2017-18 Policy or, in the alternative, that the Clows provided reasonable notice of the claim pursuant to the Hiscox Policy.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). On a Rule 12(c) motion, the court considers the pleadings, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A party opposing a Rule 12(c) motion "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Bank of New York Mellon v. Estrada*, No. 12 C 5952, 2013 WL 3811999, at *1 (N.D. Ill. July 22, 2013) (citations omitted). "Courts review Rule 12(c) motions using the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6): the facts in the pleadings are viewed in the light most favorable to the nonmoving party, and the motion will be granted 'only if it appears beyond doubt that the [nonmoving party] cannot prove any set of facts that would support his

claim for relief.'" *Id.* (citing *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

### III. DISCUSSION

#### A. The December 3, 2018 Letter is a "Claim" Against the Clows.

The interpretation of an insurance contract is a question of law to be decided by the court. *Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1123–24 (7th Cir. 1986). "[I]f the provisions of [an] insurance policy are clear and unambiguous, then the policy's provisions should be interpreted according to their plain meaning." *Id.* at 1123. "It is well-accepted that parties to an insurance policy are bound by the agreements that they make and definitions contained within the Policy are controlling." *Filip v. N. River Ins. Co.*, 559 N.E.2d 17, 18 (Ill. App. Ct. 1990) (internal citations omitted).

The Hiscox policies provide professional liability insurance to trustees. Here, the policies define "you, your or insured" as the "named insured, additional named trustee, or employee." (2017-18 Policy at 8 & 13; 2018-19 Policy at 11 & 16.) Section III defines "[n]amed insured" as "the individual, corporation, partnership, limited liability company, or other entity identified in Item 1 of the Declarations." (2017-18 Policy at 8; 2018-19 Policy at 11.) Item 1 of the Declarations identifies "Betty J. Clow and Franklin Andrew Clow, Sr." as "named insureds." (2017-18 Policy at 1; 2018-19 Policy at 3.) Thus, the Hiscox policies insure the Clows in their capacity as co-trustees of the Trust.

The policies define "claim" as "any written assertion of liability or any written demand for financial compensation or non-monetary relief."

- 8 -

(Answer ¶ 30; 2017-18 Policy at 13; 2018-19 Policy at 16.) Although the Clows do not dispute that the December 3, 2018 letter demands financial compensation for the remediation of contaminated soil at the purchased property, the Clows argue that the letter is not a "claim" that they were required to report because it was not asserted against the named insureds. Put a different way, the Clows argue that the letter is not a "claim" because it is directed at the Trust, not at the Clows.

That is not entirely true. But even if it were, it creates a distinction without a difference. The December 3, 2018 letter was addressed to the Clows "[a]s Trustees of [the Trust]." (*See* 12/3/18 Letter.) The letter states "after purchasing the Property, Mr. Stanitz discovered extensive amounts of petroleum product in the soil throughout a significant portion of the Property." (*Id.*) The letter explains an improperly installed underground gas tank caused the contamination and alleges that "the Trust failed to disclose the tank's underground existence" before the purchase. (*Id.*) The letter also alleges "that the Trust *and its agents*" deliberately concealed that information to induce a purchase, misleading Stanitz and Oak Hill. (*Id.*) (emphasis added).

Tellingly, none of the cases the Clows cite to support their argument involve trustees as the named insureds. (*See* Resp. at 10 (citing *Rohe ex rel. Rohe v. CNA Ins. Co.*, 726 N.E.2d 38, (Ill. App. Ct. 2000) (insured was a corporation) & *Ill. State Bar Ass'n. Mut. Ins. Co. v. Mondo*, 911 N.E.2d 1144, 1150 (Ill. App. Ct. 2009) (insured was a lawyer).) This is important because trusts are creatures of legal invention governed by special rules like: A trust is not a juristic person. *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Capital, LLC*,

- 9 -

No. 11 C 3274, 2013 WL 6068797, at *2 (N.D. Ill. Nov. 18, 2013). This means that a trust can only sue or be sued through its trustees acting on the trust's behalf. *Id.*

Stanitz and Oak Hill explicitly addressed the December 3, 2018 letter to the Clows in their capacity as co-trustees of the Trust, and the assertions therein refer to the Clows' actions as co-trustees. If there was a failure by the Trust to disclose the underground gas tank's existence, then it was presumably the co-trustees of the Trust who failed to make that disclosure. (*See* Underlying Compl. at 19 (showing § 13(A)(vii) of the Sales Agreement where the co-trustees represented on the Trust's behalf that, to the best of their knowledge, there were no "Hazardous Materials" on the Property, including petroleum).) The letter clearly states a claim for liability against the Clows as co-trustees of the Trust. Therefore, it constitutes a "claim" as that term is defined in the Hiscox policies.

### B. There Is a Dispute of Material Fact About When the "Claim" Was "First Made."

The 2017-18 Policy was effective December 8, 2017 to December 8, 2018 at 12:01 a.m., and the 2018-19 Policy continued coverage effective December 8, 2018 to December 8, 2019. (Compl. ¶¶ 25-26; 2017-18 Policy & 2018-19 Policy.) The policies cover certain kinds of claims, "provided the claim is first made against you during the policy period and is reported to [Hiscox] in accordance with Section V. Your obligations." (Answer ¶ 28; 2017-18 Policy at 8; 2018-19 Policy at 11.) Section V. requires written notice "of any claim as soon as possible, but in any

event, no later than 60 days after the end of the policy period." (Answer ¶ 29; 2017-18 Policy at 9; 2018-19 Policy at 12.)

The December 3, 2018 letter alleges the Trust and its agents deliberately concealed the existence of a leaking underground gas tank that caused soil contamination on the Property. In the letter, Stanitz and Oak Hill sought indemnification from the Trust for the investigation and remediation of the soil. The Underlying Lawsuit against the co-trustees as representatives of the Trust arises from this same set of facts and lodges claims of breach of contract, fraud in the inducement, and fraudulent concealment. Thus, the December 3, 2018 letter was the first iteration of this particular "claim."

Stanitz and Oak Hill's counsel emailed the December 3, 2018 letter to the Clows via their counsel, Paul Mitchell. (12/7/18 Email.) On December 7, 2018, Stanitz and Oak Hill's counsel forwarded that original December 3, 2018 email to Mitchell at a different email address, noting, "the original email appears to have not gone through." (*Id.*) Mitchell does not recall seeing the email on December 7, 2018, December 8, 2018, or December 9, 2018. (Mitchell Decl. ¶¶ 18–20.) Viewing the facts in the light most favorable to the Clows, as the Court must do at this juncture, the earliest Mitchell may have seen the email and attached letter is December 10, 2018. On December 11, 2018, Mitchell presented the letter to the Clows.

The question is when the claim was "first made against" the Clows—during the 2017-18 Policy period or the 2018-19 Policy period. Hiscox argues the letter is a claim first made against the Clows during the 2017-18 Policy period, which expired on December 8, 2018 at 12:01 a.m.,

- 11 -

meaning the Clows were required to report it by February 6, 2019 or 60 days after the 2017-18 Policy expired. The Clows did not report the claim until July 16, 2019. The Clows argue that their lawyer did not see the letter until December 10, 2018, and they did not personally see it until December 11, 2018. Thus, the claim was made during the 2018-19 Policy period, and they were not required to report it to Hiscox until February 6, 2020. The Clows further argue that the notice provision is ambiguous, failing to define when a claim is "first made" against an insured.

The Court agrees that it is not clear when a claim is "first made." Although the policies require the claim be in writing, the Court can imagine more than one reasonable interpretation for when it is "first made"—when the claim is put into writing, when it is sent to the insured, or when the insured receives legal notice—to name a few. If the words in a policy "are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). The interpretation most favorable to the Clows is that a claim is "first made" when they receive legal notice.

It is well-accepted that "notice to an attorney is notice to the client" and knowledge of an attorney is imputed to the client, "notwithstanding whether the attorney has actually communicated such knowledge to the client." *Williams v. Dorsey*, 652 N.E.2d 1286, 1290 (Ill. App. Ct. 1995) (citations omitted). Accordingly, Mitchell's knowledge of the letter is imputed to the Clows. But therein lies the rub. Although the email with the attached letter appeared in the inbox of his active

email account on December 7, 2018, Mitchell does not recall seeing it until December 10, 2018. The 2017-18 Policy expired on December 8, 2018 at 12:01 a.m., at which time the 2018-19 Policy began. When Mitchell became aware of the email and its contents is critical.

Hiscox cites two cases to support its argument that the claim was "first made" during the 2017-18 Policy period. First, Hiscox cites *James River Insurance Company v. TimCal, Inc.*, where the court found the claimant knew of the claim against it by July 9, 2012 because it received a letter on that date. 81 N.E.3d 185, 191 (Ill. App. Ct. 2017). Second, Hiscox cites *Hartford Fire Insurance Co. v. iNetworks Services, LLC*, where the court presumed "a claim was made by at least August 2016" because the parties had exchanged "negotiations" emails for several months that included "accusations of wrongdoing and discussions of settlement offers." No. 18-CV-07693, 2020 WL 1491139, at *5 n.6 (N.D. Ill. Mar. 27, 2020). These cases, although helpful, are not determinative. Neither case addresses a material dispute over when the claimant received notice of the claim against them. *See id.* (presuming a claim was made by August 2016 because of numerous email exchanges but noting that regardless "there would still be no coverage" to save the claimant's position); *TimCal*, 81 N.E.3d at 192 (finding that TimCal received the letter on July 9, 2012—a fact that TimCal did not appear to dispute). That issue is disputed here.

At this stage, it is not clear when the Clows received legal notice. Indeed, it may come down to the specific date and time that their attorney, Mitchell, opened an email. Regardless, the Court cannot resolve

- 13 -

that issue. The discovery process hopefully will provide more information and may even resolve the dispute entirely.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 27) is denied.

**IT IS SO ORDERED.**

                                Harry D. Leinenweber, Judge
                                United States District Court

Dated: 7/21/2020