IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLOYD'S SYNDICATE 3624 (HISCOX),<br><br>    Plaintiff,<br><br>    v.<br><br>BETTY J. CLOW, not Individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust; FRANKLIN ANDREW CLOW, SR., not individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust; NICK STANIZ; and OAK HILL DEVELOPMENT, LLC,<br><br>    Defendants. | Case No. 19 C 6405<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This is an action for declaratory judgment brought by Lloyd's Syndicate 3624 ("Hiscox") that issued two consecutive policies insuring the Defendants, Betty Clow, not individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust, and Franklin Andrew Clow, Sr., not individually but as Co-Trustee of the Julianne E. Clow-Baltz Declaration of Trust (hereinafter, "the Clows"). The policies covered, among other subjects, indemnification for their negligent acts. The Clows have tendered to Hiscox the defense of a lawsuit filed against them in the Circuit Court of Will County filed by Defendants,

Nick Stanitz ("Stanitz") and Oakhill Development, LLC ("Oakhill"), under both policies.

## I. BACKGROUND

The lawsuit arose out of a real estate transaction between the Clows and Oakhill, in which the latter purchased a farm from the Clows. (Pl.'s Resp. to Def. Stmt. Of Facts ("PSOF"), ¶ 16, Dkt. No. 40.) After the sale was completed, Oakhill discovered that the soil contained extensive amounts of petroleum product that necessitated remediation at a cost of approximately $800,000. (Def. Stmt. Of Facts, Ex. Dkt. No. 38.) Oakhill seeks to recover this cost from the Clows. In the state suit Oakhill contends, among other things, that the Clows failed to disclose the contamination and their failure to do so constitutes negligence. (State Compl., Compl., Exhibit B., Dkt. No. 1-2.). Hiscox has declined to provide coverage and has filed this declaratory judgment. It bases its declination of coverage on the Clows' failure to provide timely notice of the claim made against them by Oakhill as required under the terms of the policies. The Clows respond that they did notify Hiscox on a timely basis for at least one of the two consecutive claims-made policies. The parties have cross-moved for Summary Judgment.

The parties have each filed Local Rule 56 Statements of Facts. None of the factual matters set forth are in serious

dispute. The disagreement centers on the interpretation of these facts as they apply to policy provisions. The policy provisions applicable have been set forth in the Court's previous ruling on a motion for a judgment on the pleadings (Dkt. No. 34) filed by Hiscox and will not be set forth again. Suffice to say that each of the policies identically set forth that Hiscox will provide coverage "for covered claims . . . provided the claim is first made against you during the policy period and is reported to us in accordance with Section (V.) Your obligation." (2018 Policy, Compl. Ex. D, Dkt. No. 1-4; 2019 Policy, Compl. Ex. E, Dkt. No. 1-5.) A "claim" is defined as "any written assertion of liability or any written demand for financial compensation or non-monetary relief." (*Id.*) The policy also stated that "[y]ou must give written notice to us of any claim as soon as possible, but in any event, no later than 60 days after the end of the policy period." (*Id.*) The first of the two consecutive policies commenced on December 8, 2017, and expired on December 8, 2018 (2018 Policy, Compl. Ex. D., Dkt. No. 1-4.) ("the 2018 policy") and the second commenced on December 8, 2018, and expired on December 8, 2019 (2019 Policy, Compl. Ex. E., Dkt. No. 1-5.) ("the 2019 policy"). With exception of the policy periods the policies were identical.

In July 2017, the Clows and Oakhill entered into the agreement for the sale of the Clows' 30-acre farm. (PSOF ¶ 16, Dkt. No. 40.) The closing occurred on April 27, 2018. (*Id.* at ¶ 17.) The Clows were represented by attorney Paul Mitchell ("Mitchell"). (*Id.*) On August 9, 2018, Oakhill's attorney, Leonard Monson ("Monson"), sent Mitchell an email advising him that remnants of an underground gas storage tank had been discovered on the property whose existence the Clows had not disclosed to Oakhill. (August 9 Letter, PSOF, Ex. B, Dkt. No. 40.) The letter went on to suggest that a dialogue be opened because "the problem would materially impact the feasibility of the project that was contemplated." (*Id.*) Because there was no response to this email, Monson sent a follow-up email to Mitchell on August 24, 2018. (Def. Resp. to Pl. Stmt. Of Additional Facts ("DSOF") ¶ 2, Dkt. No. 45.) The email stated:

> "I believe your client had a legal duty to disclose this issue and failed to do so. [] If the costs of remediation were not so great . . . my client would have probably chosen to absorb the cost. However, the excessive costs of remediation, combined with the duty of the Seller to disclose, prevents my client from doing so. Please contact me with your thoughts on how we can amicably resolve this issue."

(*Id.*) On September 10, 2018, Monson set another email to Mitchell and also to Attorney Herbert Rosenberg ("Rosenberg") who was taking over the representation of the Clows in the

matter. (*Id.* at ¶ 3.) In the email Munson stated that he hoped the lack of response to his prior emails was not a

> "minimization of the seriousness of the matter, nor taken as an indication of the lack of resolve of my client to take all measures at law and equity to be compensated for the contractual default of the hazardous waste provision of the contract and the failure to disclose the contamination."

(Id.) On October 12, 2018, Stanitz personally sent a letter to Betty Clow, with copies to Andrew Clow and attorney Mitchell, that addressed the $800,000 remedial cost of the contamination and requested "any assistance you can give me." (*Id.* at ¶ 5.) The Clows admit that Oak Hill's attorney emailed a copy of this letter to Paul Mitchell, but dispute that Stanitz actually mailed the letter to the Clows. (*Id.*) On October 23, 2018, the Clow Foundation held a meeting which was attended by the Clows, Michell, and Rosenberg at which possible litigation with Oakhill was discussed. (*Id.* at ¶ 6.)

On December 3, 2018, a different attorney, Timothy Elliot ("Elliot"), sent an email on behalf of Oakhill in which he demanded indemnification for the costs of investigation and remediation of the contaminated soil resulting from the leaking gas tank. (PSOF ¶ 22, Dkt. No. 40.) Apparently, this email was sent to a dormant email account, so Mitchell did not receive this email. (*Id.* at ¶ 25.) The email was resent on December 7,

- 5 -

2018, to a proper email account for Mitchell, but he did not open and read its contents until December 10, 2018. (*Id.* at ¶ 26-27.) However, it was not until March 13, 2019, that Rosenberg responded to the December 7 notice, by denying on the Clows behalf any responsibility for the contamination. (*Id.* at ¶ 30.) On April 25, 2019, Oakhill filed suit against the Clows demanding judgment in the amount of $750,270.73. (*Id.* at ¶ 31.) On July 16, 2019, the Clows provided notice of the suit to Hiscox. (*Id.* at ¶ 32.)

The Clows contend that they have complied with the notice requirements of at least one of the Hiscox's policies. They contend that the first notice they received from Oakhill which specifically requested indemnification was not received by them until their attorney Mitchell opened the email on December 11, 2018, which was three days after the 2018 policy terminated and was replaced by the 2019 policy. Consequently, their first notice of a claims made against them was during the pendency of the 2019 policy. Therefore, because under the terms of the 2019 policy, the Clows had "no later than 60 days after the end of the policy period," *i.e.,* 60 days after December 8, 2019, to notify Hiscox of the lawsuit. Since they notified Hiscox on July 16, 2019, they have complied with the policy's notice requirement. In support they point to Hiscox's response to their

Rule 56 statement where it does not deny that Clows' attorney did not open the email that was originally sent on December 3 and resent on December 7 until December 10 (PSOF ¶ 26-27, Dkt. No. 40.) Therefore, they are entitled to summary judgment.

Hiscox initially points out that each of the policies define "claim" in the same way: "Claim means any written assertion of liability or any written demand for financial compensation or non-monetary relief." (2018 Policy at 13; 2019 Policy at 16). Hiscox argues that the December 3 (or December 7) letter was not the first notice of a claim being made against the Clows. It points out that Oakhill first advised the Clows of its claim for contamination in the email correspondence to the Clows on August 9, 2018. This notice and lack of response to it was highlighted in a subsequent email correspondence sent to the Clows' attorney on August 24, 2018, and again on September 10, 2018. Stanitz emphasized his concern over a lack of response to the Oakhill claim on October 12, 2018, when he wrote directly to Betty Clow, with copies to her attorney and Franklin Andrew Clow. Hiscox further argues that the Clows obviously had notice of the Oakhill claim because the possibility of litigation with Oakhill was discussed at the Clow Foundation meeting on October 23, 2018, attended by the Clows, Mitchell and Rosenberg. Thus, notice of claims made was first received by the Clows as early as August

9, 2018, clearly within the 2018 policy period. Therefore, the Clows had 60 days from December 8, 2018, or February 6, 2019, to notify Hiscox. The Clows did not notify Hiscox until July 16, 2019, a date way too late under the terms of the policy.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id*.

When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If, however, the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Id*. at 380.

On cross-motions for summary judgment, "[t]he ordinary standards for summary judgment remain unchanged" and the Court construes "all facts and inferences arising from them in favor of the party against whom the motion under consideration is

made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

### III. DISCUSSION

Hiscox cites *James River Insurance Company v. TimCal, Inc.*, 81 N.E.3d 185 (Ill. App. Ct. 1st Dist. 2017) in support of its position. This case involved an insurer's duty to defend or indemnity an insurance agent for negligent placement of insurance coverage that allegedly caused another insurer to incur damages. *Id.* at 186. TimCal was an insurance agent. *Id.* In July 2012, TimCal received a letter from an insurance company charging it with breach of its duties as an insurance agent and informing it that that company would seek to recover damages. *Id.* at 187. The agent did not inform James River, its professional liability carrier, of the claim until April 2013. *Id.* at 188. James River filed a declaratory judgment action against TimCal seeking a declaration that it had no duty to defend or indemnify TimCal. *Id.* The Illinois Appellate Court granted summary judgment against TimCal. *Id.* at 189. The policy in question had claims-made coverage. *Id.* at 188. The policy defined "claim" to mean "a written demand for monetary damages arising out of or resulting from the performing or failure to perform 'professional services.'" *Id.* at 189. Similar to the Hiscox policy, the policy stated "[a]s a condition precedent to

our obligations under this Policy, you shall give written notice to us as soon as practical, but in no event later than 60 days after the end of the 'Policy Period' of a 'Claim' made against you." *Id.* TimCal argued that the July 9, 2012, letter did not constitute a claim because if failed to demand a specific dollar amount. *Id.* at 190. The court held that the letter did constitute a claim because it demanded payment of monetary damages, even though it did not specify a dollar amount. *Id.* at 191. The court held that the policy provision was unambiguous. *Id.* Hiscox thus claims that the court should deny the Clows' Motion for Summary Judgment and grant its Motion.

The Clows respond by arguing that Hiscox is changing its theories of recovery during the briefing of the summary judgment motions. It argues that the Complaint it filed against the Clows relies upon the December 3 (or December 6) email as the notice and that in response to their Rule 56 statement it admits that it cannot prove that the Clows received this notice until December 11, 2018, thus placing the claim into the term of the 2019 policy. They rely upon the well-known "mend the hold" doctrine which they claim prevents Hiscox from filing a suit saying that it is relying on the December notice but arguing in its briefs that it is relying on early sent notices.

The Clows cite *Amerisure v. National Surety Corp.*, 695 F.3d 632, 636 (7th Cir. 2012) and *Ryerson Inc., Federal Insurance Co.*, 676 F.3d, 610, 614 (7th Cir. 2012), to show that Illinois applies this doctrine (which is a minority position in the nation). Essentially the "mend the hold" doctrine prevents a party to a contract litigation from changing its position when it perceives that its first pled position will not fly. *Amerisure Ins. Co.*, 695 F.3d at 636; *Ryerson*, 676 F.3d at 614. It also has been applied to insurance contracts when an insurance company declines coverage for a specific reason and later adopts a new reason in litigation. *North American Ins. Co. v. Kemper National Insurance,* 785 N.E.2d 856, 861 (Ill. App. Ct. 1st Dist. 2001). The Illinois Supreme Court has described the doctrine as one that estops a contract party from changing the grounds on which he has refused to perform the contract, whether or not it was a ground stated in a pleading or otherwise in the course of litigation.

However, where the Clows' argument fails is that Hiscox has not changed its position, it merely changed the facts it is relying on. It originally claimed in its Complaint that the Clows' notice was untimely which is still its position. After the Clows point out that Hiscox should not rely on the December notice of claim because their attorney had not seen this notice,

Hiscox then presented four other documents that could arguably constitute notice of claims. To hold otherwise would deny a party from availing itself of subsequent obtained information gained through discovery. Here, for example, Hiscox would have no reason to know at the time the suit was filed that attorney Mitchell did not read his emails on the date that he received them. There is no good reason to prevent Hiscox from presenting other information that may have been obtained through discovery to prove when the Clows received notice of the Oakhill claim. The Seventh Circuit also pointed out that a defendant may add defenses after suit has been filed. While the Clows are correct that "mend the hold" is applied in insurance disputes, it only applies when an insurance company specifies a precise refusal in declining to pay a claim and then later in litigation adopts a different reason for declination when the first reason presented is a loser. It is rare for an insurance company these days to be specific in declining coverage for this reason. It is normal for a company to "reserve all rights" in declining coverage rather than limit themselves to a specific reason. Here, however, the reason given by Hiscox for not providing coverage to the Clows was untimely notice. This was the one alleged in the Complaint and the one Hiscox is pressing in its Motion for Summary Judgment and in its defense to the Clows' Motion for Summary Judgment.

## IV. **CONCLUSION**

For the reasons stated herein, Hiscox's Motion of for Summary Judgment (Dkt. No. 41) is granted, and the Clows' Motion for Summary Judgment (Dkt. No. 36) is denied.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 3/2/2022